**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THERESA E. REAVES,**

**Plaintiff,**

**v.** **Case No: 6:12-cv-1547-Orl-22GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

# REPORT AND RECOMMENDATION

The Plaintiff Theresa E. Reaves (the "Claimant") brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits and Supplemental Security Income. Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by (1) applying incorrect legal standards to the medical opinions in the record, (2) failing to consider the consider Medical-Vocational Guideline 201.10, and (3) failing to pose a hypothetical question to the Vocational Expert (the "VE") which accounted for all of Claimant's functional limitations. Doc. No. 26 at 11-26. For the reasons set forth below, it is recommended that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

## I. BACKGROUND.

Claimant was born on August 14, 1958. R. 24. On December 6, 2004, Claimant applied for disability benefits, alleging a disability onset date of October 7, 2004. R. 25, 63, 73-74, 184, 188. On March 6, 2007, ALJ Teresa J. Davenport issued a decision finding that Claimant was

not disabled because there were a significant number of jobs in the national economy that she could perform. R. 63-72. On February 22, 2008, the Appeals Council vacated ALJ Davenport's decision and remanded the case to the ALJ to consider new and material evidence, and then to issue a new decision. R. 28-29

On January 27, 2010, ALJ Gerald F. Murray held a second hearing on Claimant's disability application. R. 1100-19, 1165-85. Claimant, a VE, and a non-examining neurosurgeon testified. R. 1100-19, 1165-85. On February 16, 2010, ALJ Murray issued a decision finding that Claimant retains the RFC "to perform light work . . ., including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, and to stand and walk 6 hours in an 8-hour workday. However, the claimant requires a sit/stand option and is restricted to unskilled work." R. 19. Thus, the ALJ found that Claimant could perform light work, except that she required a sit/stand option and was restricted to unskilled work. R. 19. At step-five of the sequential evaluation process, the ALJ determined, based in part on the VE's testimony, that there were approximately 800 unskilled light work jobs in the national economy with a sit/stand option that Claimant could perform. R. 24-25. Accordingly, the ALJ determined that Claimant was not disabled. R. 25.

## II. <u>ANALYSIS</u>.

### A. Medical Opinion Evidence.

Claimant argues the ALJ erred with respect to the handling of the treating, examining, and non-examining opinions. Doc. No. 26 at 11-21. The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to

support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments; and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary

> finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[1] The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician. *Shafarz v. Bowen*, 825 F.3d 278, 279-80 (11th Cir. 1987); *Magill v. Commissioner of Social Security*, 147 Fed.Appx. 92, 95 (11th Cir. 2005) (unpublished) (non-examining opinions do not establish good cause to reject treating physician opinion). Moreover, the opinions of a non-examining physician do not constitute substantial evidence upon which to base a decision when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).[2]

Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand);

---

[1] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

[2] In her brief, the Commissioner maintains that after changes in the regulations in 1991 and 2000, "the opinions of non-examining sources may override opinions from treating and examining sources, provided the non-examining source's opinion is supported by the evidence in the record." Doc. No. 28 at 17 (citing 20 C.F.R. § 404.1527(c), (e); SSR 96-6p). The Commissioner contends that the Eleventh Circuit has not directly addressed the change in the regulations. The court disagrees. The Eleventh Circuit's precedent on this issue remains unchanged. *See Shafarz v. Bowen*, 825 F.3d 278, 279-80 (11th Cir. 1987) (non-examining opinion does not constitute good cause to reject treating physician opinion and standing alone does not constitute substantial evidence upon which to base a decision) (citing *Spencer*, 765 F.2d at 1094); *Lamb*, 847 F.2d at 703 (same); *Poellnitz v. Astrue*, 349 Fed.Appx. 500, 502 (11th Cir. 2009) (unpublished) ("the opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician"); *Magill v. Commissioner of Social Security*, 147 Fed.Appx. 92, 95 (11th Cir. 2005) (unpublished) (non-examining opinions do not establish good cause to reject treating physician opinion). Thus, while under some circumstances the opinion of a non-examining physician may be entitled to greater weight than the opinion of a treating physician, the regulations, rules, and the Eleventh Circuit's precedent remains the same.

*see also Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

As detailed below, medical opinions from the following treating, examining, and non-examining physicians and psychologists are at issue in this case: Dr. Federico C. Vinas, Claimant's treating neurosurgeon (R. 753, 756, 759, 868); Dr. John A. Ortolani, Claimant's treating neurologist (R. 1077-83); Dr. Alvan Barbers, a consultative examining physician (R. 907-23); Dr. John Oatley, a consultative examining psychologist (R. 924-29); and Dr. Bruce Witkind (R. 1170-85), a non-examining testifying neurosurgeon. The opinions of Drs. Vinas, Ortolani, and Barber all contain restrictions which are more limited than the ALJ's ultimate RFC. *Compare* R. 753, 756, 759, 868, 919 *with* R. 19. For the reasons set forth below, the court finds that the ALJ erred with respect to his treatment of the opinions of Drs. Vinas and Barber.

**1. Dr. Federico C. Vinas, M.D.**

Dr. Vinas is Claimant's primary treating neurosurgeon who, on June 26, 2007, performed an L5-S1 decompressive laminectomy and disc fusion on Claimant for severe lumbar spondylosis with disc herniation. R. 646-48. Dr. Vinas also treated Claimant on approximately five (5) separate occasions until May 20, 2008, following her surgery. R. 752-59, 867-68. In each treatment note, Dr. Vinas opines that Claimant should "avoid repetitive bending or twisting of the spine, lifting or weights in excess of 15 lbs., or participating in any activity which might increase the stress over the lumbar spine." R. 753, 756, 759, 868. Thus, Dr. Vinas opined that Claimant should not lift weight greater than 15 pounds and should avoid lumbar stress. R. 753, 756, 759, 868.

As set forth above, in his decision the ALJ found that Claimant retains the RFC to perform unskilled light work, "including the ability to lift and carry 20 pounds occasionally." R. 19. *See also* 20 C.F.R. § 404.1567(b) (defining light work as the ability to lift and carry 20 pounds occasionally). Thus, Dr. Vinas's opinion conflicts with ALJ's RFC assessment. *Compare* R. 19 *with* R. 753, 756, 759, 868. While the ALJ's decision does provide a general discussion of Dr. Vinas's treatment records, the ALJ does not address Dr. Vinas's opinions, nor does the ALJ state what weight, if any, he gave to those opinions. R. 20-21. The ALJ's failure to state with particularity the weight given to Dr. Vinas's opinions and the reasons therefor is reversible error. *See Winschel*, 631 F.3d at 1178-79; *MacGregor*, 786 F.2d at 1053.

The Commissioner acknowledges that "the ALJ did not state the weight he accorded to Dr. Vinas's opinion," but argues that the error is harmless. Doc. No. 28 at 13-15. The court disagrees. First, in *Winschel*, the Eleventh Circuit stated that in the absence of an express statement of the weight given and the reasons therefor "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. at 1178-79. This clearly indicates that failing to state the weight given to an opinion of a treating physician that is more restrictive than the ALJ's ultimate RFC is not a harmless error.

Second, if Claimant could not lift more than fifteen pounds, as Dr. Vinas opined, she could not perform light work and would be limited to sedentary work. *See* 20 C.F.R. § 404.1567(b) (defining light work as the ability to lift and carry 20 pounds occasionally); 20 C.F.R. § 404.1567(a) (defining sedentary work as not lifting more than 10 pounds at a time). Claimant was 51 at the time of the ALJ's decision and, therefore, was person closely approaching advanced age (50-54). R. 24. *See also* 20 C.F.R. § 404.1563(d); *Crook v.*

*Barnhart*, 244 F.Supp.2d 1281, 1283 (N.D. Ala. Jan. 21, 2003) (quoting *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 780 (6th Cir. 1987) ("For purposes of determining age under the [G]rids, the claimant's age as of the time of the decision governs.")). As such, if Claimant was limited to unskilled sedentary work, then Medical-Vocational Rules 201.09 and/or 201.10 may well require a finding of disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Accordingly, on this record, the couirt cannot find that the ALJ's error is harmless.

Third, while the Commissioner argues that the ALJ's error is harmless based on a portion of VE's testimony related to certain specific occupations, the ALJ's decision neither addresses nor adopts that portion of the VE's testimony. Doc. No. 28 at 13-15. *See also* R. 24-25, 1103-1104, 1113-1119. Based on the forgoing, it is recommended that the Court find that the ALJ committed reversible error by failing to state the weight given to Dr. Vinas's opinion and the reasons therefor.

While the ALJ's error requires reversal, the court will address the other arguments raised by Claimant.[3]

**2. Dr. Alvan Barber, M.D.**

On July 2, 2008, Dr. Barber conducted a consultative examination of Claimant. R. 907-23. Ultimately, Dr. Barber opined that Claimant is limited to standing and walking for 1 hour

[3] With respect to Dr. John Oatley, Ph.D., Claimant maintains that the ALJ also erred by failing to state with particularity the weight given to his opinions and diagnoses. *See* R. 924-29; Doc. No. 26 at 19-20. It is undisputed that the ALJ did not address Dr. Oatley's evaluation or opinion. *See* R. 16-25. Although Dr. Oatley diagnosed Claimant with Pain Disorder associated with depression and back pain, chronic Adjustment Disorder, and stated that Claimant's prognosis is guarded, he ultimately opined that these impairments result in mild to no functional limitations. R. 926-29. Accordingly, any error in failing to state with particularity the weight given to Dr. Oatley's opinion is harmless because the opinion does not conflict with the ALJ's RFC. *See Wright v. Barnhart*, 153 Fed.Appx. 678, 684 (11th Cir. 2005) (unpublished) (failure to state the weight given to opinion is harmless where opinion did conflict with ALJ's RFC).

each during an eight hour workday. R. 919.[4] As set forth above, the ALJ determined that Claimant retains the RFC for light work, including the ability "to stand and walk 6 hours in an 8-hour workday" with a sit/stand option. R. 19. In his decision, the ALJ makes the following finding with respect to Dr. Barber's opinion:

> Dr. Barber submitted his opinion that claimant . . . can . . . stand/walk 2 hours in an 8-hour day, with some additional environmental restrictions. The [ALJ] gives significant weight to Dr. Barber's opinion, to the extent it is consistent with the assessed [RFC]. To the extent it is more restrictive, the [ALJ] gives it little weight, as those restrictions are not consistent with the medical evidence of record or supported by the record as a whole.

R. 23. Thus, the ALJ gave Dr. Barber's opinion that Claimant is limited to standing and walking for 1 hour each in an eight hour work day little weight because it is "not consistent with the medical evidence of record or supported by the record as a whole." R. 23. As set forth above, such conclusory statements are insufficient to show that the ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008); *Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."). Accordingly, the ALJ's decision to give little weight to a portion of Dr. Barber's opinion is not supported by substantial evidence.[5]

[4] Dr. Barber's evaluation contains other detailed opinions regarding Claimant's functional limitations, but those limitations are not more restrictive that the ALJ's RFC, and ,therefore, Dr. Barber's opinion regarding Claimant's ability to stand and walk is the only portion of the opinion that must be addressed here. *See* R. 918-23.

[5] In her brief, the Commissioner maintains that "the ALJ did not find that [Claimant] could stand/walk for six hours but imposed an at will sit/stand option." Doc. No. 28 at 16. To the contrary, the ALJ expressly found that Claimant can "stand and walk 6 hours in an 8-hour workday." R. 19.

**3. Dr. John A. Ortolani, M.D.**

A November 12, 2007, a magnetic resonance imaging ("MRI") of Claimant's cervical spine revealed degenerative disc disease at the C2-C3 and C5-C6 levels with a bulging disc at C5-C6 which "encroaches on the spinal cord." R. 765, 888. On June 2, 2008, Dr. Ortolani, a neurologist, began treating Claimant for her back and neck pain. R. 1068-69. The record contains approximately seven (7) treatment notes from Dr. Ortolani between June 2008 and August 2009. R. 929-34, 1068-1075.

On June 2, 2008, Dr. Ortolani diagnosed Claimant with "cervical strain syndrome of moderate severity, with radicular symptoms in the left arm," and lumbosacral strain syndrome of moderate severity, with radicular symptoms in the left leg." R. 1068. Dr. Ortolani ordered an MRI, which revealed a herniated disc at the C5-C6 level and an "annular tear versus small herniated disc C3-4 level." R. 931. On August 5, 2008, Claimant was still experiencing a moderate amount of radicular pain down the left arm and right leg, so Dr. Ortolani ordered an electromyography study ("EMG"). R. 1071.

While the EMG revealed normal ranges of nerve conduction velocities in the left upper and right lower extremities, the study's impressions were: "cervical radiculopathy C5-C6 on the left with acute changes," and "lumbar radiculopathy L5-S1 on the right with acute changes." R. 929. Thus, the EMG study concluded that Claimant suffers from cervical and lumbar radiculopathy with acute changes. R. 929. On September 18, 2009, Dr. Ortolani's notes state that the EMG study "shows nerve damage at C5-C6." R. 1072.

On June 9, 2009, an MRI revealed "multilevel degenerative changes, most significant at C3-4 and C5-6," with "sizable disc protrusions at both these levels." R. 1012. At the C3-C4 level, the disc bulge "can be seen touching the exiting C4 nerve root on the left." R. 1011. At

the C5-C6 level, the "thecal sac can be seen touching the ventral aspect of the cord," and this "is in a good location to produce a left C6 radiculopathy." R. 1011.

On June 5, 2010, Dr. Ortolani completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). R. 1077-83. Dr. Ortolani opined that Claimant: can lift and/or carry up to 10 pounds occasionally; sit for 3 hour, stand and walk for one hour each in an 8 hour workday; requires a cane for ambulation; is limited in her ability to use her upper and lower extremities for up to 1/3 of the workday; can never climb stairs, balance, stoop, kneel, crouch, or crawl; cannot shop, travel without a companion, walk a block at a reasonable pace, or use standard public transportation; and will frequently experience fatigue or other symptoms which are severe enough to interfere with the attention and concentration needed to perform even simple tasks. R. 1077-83. Thus, Dr. Ortolani opined that Claimant is unable to work and these limitations have existed since June of 2008. R. 1082-83. Dr. Ortolani did not identify any particular medical evidence in support of his opinions. R. 1077-83.

In his decision, with the exception of characterizing the EMG study as having only shown the possibility of cervical and lumbar radiculopathy, the ALJ otherwise accurately described Dr. Ortolani's general treatment records. *Compare* R. 21 *with* 929. The ALJ then describes Dr. Witkind's non-examining testimony, in part, as follows:

> Dr. Witkind testified that the record does not confirm the existence of radiculopathy, noting that the cervical MRI of June 2009 showed a disc protrusion, but did not show displacement of the nerve root. Further, Dr. Witkind stated that the EMG showed that she *could* have radiculopathy, but that finding is not supported by Dr. Ortolani's notes showing no weakness or atrophy and a negative straight leg raise.

R. 21. Thus, ALJ notes that Dr. Witkind testified that the medical evidence, including the EMG study, the June 9, 2009, MRI, and Dr. Ortolani's treatment notes do not confirm the existence of radiculopathy. R. 21.

With respect to Dr. Ortolani's opinion, the ALJ makes the following finding:

> The [ALJ] does not give controlling weigh [sic] to Dr. Ortolani's opinion, as it is inconsistent with his own objective findings as well as the other medical evidence in the record, including negative straight leg and no muscle weakness or atrophy, and is not supported by the record as a whole. Further, as Dr. Witkind testified, Dr. Ortolani offered no rationale to support the restrictions and the restrictions appear to be based primarily on the claimant's subject reports. For these reasons, the [ALJ] gives little weight to Dr. Ortolani's opinion.

R. 23. Thus, the ALJ gives little weight to Dr. Ortolani's opinion because: 1) it is inconsistent with his own objective findings including the June 2, 2008 physical examination which showed negative straight leg raises and no atrophy; 2) it is inconsistent with the other medical evidence in the record and is not supported by the records as a whole; 3) Dr. Ortolani offered no rationale to support the restrictions; and 4) the restrictions appear to be based on the Claimant's subjective reports. R. 23.

The ALJ's findings that Dr. Ortolani's opinion is inconsistent with this own objective findings, generally inconsistent with other medical evidence and the record as a whole, and appears based on Claimant's subjective statements are not supported by substantial evidence. R. 23.[6] The ALJ's final reason for giving Dr. Ortolani's opinion little weight is that he failed to offer any rationale to support the restrictions. R. 23. The ALJ is correct that the opinion itself fails to list or describe the medical bases for the restrictions offered. R. 929-31, 1011-12, 1068-

[6] The August 6, 2008, EMG study showed: "Cervical radiculopathy C5-6 on the left with acute changes;" and "Lumbar radiculopathy L5-S1 on the right with acute changes." R. 21, 929. Moreover, the June 9, 2009 MRI confirmed a herniated disc at C5-C6 touching the nerve root and concluded that it "is in a good location to produce left C6 radiculopathy." R. 1011. These objective test results all occurred subsequent to Dr. Ortolani's June 2, 2008 physical examination, which found negative straight leg raises and no atrophy. R. 1068. Therefore, Dr. Ortolani's June 2, 2008 physical examination findings are not inconsistent with his June 5, 2010 opinion, which occurred after the EMG study and June 9, 2009 MRI. The ALJ's general statements that Dr. Ortolani's opinion is inconsistent with other medical evidence and the record as a whole, and that his opinion appears to be based on Claimant's subjective statements are not supported by substantial evidence. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008); *Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

75, 1077-83. Therefore, the court finds that the ALJ's handling of Dr. Ortolani's opinion is not an independent basis to remand.[7]

**B. MEDICAL-VOCATIONAL GUIDELINE 201.10.**

Claimant argues that the ALJ Murray, who stated in his decision that he was incorporating ALJ Davenport's "findings leading to the conclusion that the claimant was not disabled prior to the date of that decision," (*see* R. 20) erred by failing to actually adopt ALJ Davenport's RFC, which limited Claimant to standing and walking for 2 hours in and 8-hour workday (R. 68). Doc. No. 26 at 22-23. Claimant points out that based on Claimant's age at the time of ALJ Murray's decision, if she was limited to an RFC for sedentary work, then Medical-Vocational Rule 201.10 would require a finding of disabled. Doc. No. 26 at 22-23. However, ALJ Murray was not required to weigh or adopt ALJ Davenport's RFC and, because the Appeals Council vacated ALJ Davenport's decision, it had no legal effect. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (prior vacated opinions have no legal effect or force). Accordingly the court rejects this argument.

**C. HYPOTHETICAL QUESTION**.

Based upon the ALJ's errors with respect to the opinion evidence, Claimant maintains that the ALJ also erred at step-five by failing to pose a hypothetical question to the VE which included all of Claimant's limitations. Doc. No. 26 at 23-25. The court notes that the ALJ did not ask the VE a hypothetical question related to Claimant's specific limitations. *See* R. 1000-1119. Nevertheless, due to the errors detailed above, the ALJ will be required to re-evaluate Claimant's RFC on remand, which directly impacts that ALJ's findings at step-five and,

---

[7] Claimant also argues that the ALJ erred by giving more weight to the opinion of Dr. Witkind, a non-examining physician who testified at the hearing, than to the opinions of the treating and examining physicians. Doc. No. 26 at 20-21. As set forth above, the case must be reversed and remanded based on the ALJ's errors with respect to Dr. Vinas and Barber's opinions. On remand the ALJ will have to reweigh the medical evidence. Accordingly, further analysis of the alleged errors below in resolving conflicts in the medical evidence would not be productive.

therefore, it is unnecessary to determine whether the ALJ also erred at step-five of the sequential evaluation process

**III. CONCLUSION.**

Claimant requests reversal and a remand for further proceedings. Doc. No. 26 at 26. . The court finds that a remand for further proceedings is appropriate.

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **REVERSE** and **REMAND** the final decision for further proceedings pursuant to sentence four of Section 405(g);
2. Enter judgment in favor of the Claimant and against the Commissioner; and
3. Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on December 3, 2013.

THE HONORABLE PAUL A. ZOSS
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224